## LUTHER S. CUSHING and Others v. J. A. HURLEY.[1]

July 29, 1910.

Nos. 16,674—(124).

**Mechanic's lien — waiver of right to file.**

 A trust agreement entered into for the benefit of creditors, a conveyance of property in pursuance thereof by the debtor to trustees, to be sold and the proceeds applied in the payment of debts, and the acceptance thereof by the creditors, by the terms of which they agree not to "take any steps or proceedings in court, or otherwise, to collect or enforce the said debts owing to them, or either or any of them," *held*, a waiver of the right to perfect mechanics' liens against the property involved in the trust, upon claims for which such liens might have been perfected but for the trust agreement.

**Action to set aside such lien.**

 An action may be maintained to set aside liens perfected in violation of the agreement.

[1]Reported in 127 N. W. 441.

**Answer — counterclaim.**

   Defendant's answer *held* not to state a counterclaim, entitling him to the relief demanded in the answer.


   Action in the district court for Ramsey county against J. A. Hurley and the Western Supply Company to determine that defendants had not any right, claim or demand in or to certain parcels of real property described in the trust deed mentioned in the opinion; but only the right to receive from plaintiff trustees out of the proceeds on the sale thereof such sums of money as by the terms of the trust deed defendant was entitled to receive on account thereof, and that any deed made by plaintiffs under such trust deed would be effective to convey all the title which Mark J. Fitzpatrick and Bridget Fitzpatrick, or either of them, had thereto, free from any lien or claim to or against the same in defendants or either of them. The facts are stated in the opinion.

   The separate answer of the Western Supply Company disclaimed any interest in the claims of defendant Hurley against the property. The separate answer of defendant Hurley alleged that, at the time of the execution of the trust deed, he had agreed with the Fitzpatricks to complete the plumbing and heating apparatus in the buildings in course of erection on four of the parcels mentioned in the deed; admitted that defendant consented in writing to the execution and delivery of said trust deed, and alleged that, at the request of the plaintiff trustees, defendant continued to perform his agreements and the work was not completed until October 31, 1908, on one parcel, and May 27, 1909, on the other parcels, and alleged that statements of lien were filed on January 23, 1909, and August 10, 1909. This answer alleged that parcel 14 had been sold and the net proceeds thereof, after paying the mortgages, amounted to $6,140, on which sum defendant claimed a first lien of the sum of $2,650.80.

   The case was tried before Hallam, J., who found that plaintiffs had a legal estate in the lands subject to the conditions set forth in the trust deed; that the lien claims were invalid and that defendants had no right to the property. From the judgment entered pursuant to the findings, defendant Hurley appealed. Affirmed.

*Walter L. Chapin,* for appellant.
*Durment, Moore & Sanborn,* for respondents.

BROWN, J.

The facts in this case as disclosed by the pleadings, and about which there is no substantial controversy, save as to the legal inferences to be drawn therefrom, are as follows:

Some time prior to March 12, 1908, Thomas and Mark Fitzpatrick were copartners, engaged in the business of contractors. Prior to the date named, Thomas died, leaving Mark the sole survivor, who, at the time stated, was engaged in winding up the affairs of the firm. The copartnership, and also Mark Fitzpatrick individually, were heavily indebted to various persons, which indebtedness could not be paid or discharged, save from the proceeds of the sale of property then owned by each. Negotiations between the parties resulted in the execution by Fitzpatrick of the trust deed for the benefit of the creditors of all property owned by the partnership, and by Mark Fitzpatrick individually, to the plaintiffs, the same to be by them converted into money for the purpose of paying the debts of both. Bridget Fitzpatrick, widow, and sole devisee under the last will of Thomas Fitzpatrick, deceased, joined in the deed, and also contributed $8,000 in aid of the transaction. The deed recites the facts stated, the desire of the Fitzpatricks to pay and discharge their obligations, specifically mentioned the parcels of property conveyed, and the incumbrances, liens, and lienable claims against the same, and provided that the trustees shall assume the control and management of the property, receive the rents and profits therefrom, sell and dispose of the same, or so much thereof as may be necessary to accomplish the purposes of the trust, applying the proceeds: (1) In payment of the cost and expense of the trust; (2) in payment of all taxes and assessments against the property, and the principal and interest upon mortgage incumbrances; (3) the payment of the cost of completing existing contracts for the construction of buildings; (4) "to pay out of the proceeds derived from each sale of any of the real property hereinbefore described the liens or lienable claims hereinbefore specified as a lien or claim against

the parcel so sold; * * * (6) the remainder of the proceeds to apply pro rata to satisfy and discharge the existing claims of the creditors of the firm of Thomas Fitzpatrick & Son and of Mark J. Fitzpatrick." The deed further provided that in the final distribution "all lien or lienable claims hereinbefore specified as such, held by any of such creditors, and which shall not have been fully paid, shall be included therein and shall receive their pro rata share."

The deed refers to four tracts of land against which defendant Hurley had a lienable claim; that is, a claim upon which at that time he had the right to perfect a lien against the property, and the provisions of the deed just quoted, by which the distribution of the proceeds of the property is controlled, gave him a preference with other creditors holding liens or lienable claims against the same property, and the right to participate pro rata in the surplus after the payment of all preferred claims. The deed contains numerous other specific directions and stipulations not necessary to specially refer to. What has been said discloses the general purpose of the trust, and the rights of all parties thereunder.

The creditors, including defendant Hurley, accepted the trust agreement, and by a separate writing, in which particular reference is made to the deed, agreed as follows: "Now, therefore, in consideration of the foregoing and of the execution of the said agreement by the parties thereto at the request of the undersigned, and of the mutual forbearance by each and all of the undersigned in the prosecution of their said several claims the said undersigned, and each thereof, do hereby consent to and do hereby ratify the said agreement in all respects, and do hereby agree each with the other that the time for the payment of their said several debts, both as to principal and interest, be and the same is hereby extended to and including the 12th day of March, 1910, and the estate of said Thomas Fitzpatrick and the heirs and devisee thereof are hereby fully released and discharged from any personal liability for the payment of the said debts or any thereof, and the undersigned, in case sufficient shall not be realized to pay their claims in full out of the said trust property, do hereby agree to look wholly to Mark J. Fitzpatrick for the payment of the residue thereof; it being understood

that said Mark J. Fitzpatrick shall in writing agree contemporaneously with the execution hereof that such release of the estate of said Thomas Fitzpatrick shall not release in any manner or to any degree the said Mark J. Fitzpatrick from his obligation to pay any portion of said debts which cannot be satisfied and discharged out of the said trust fund, and the undersigned agree that they and each of them will not until and after said period of two years from the date hereof take any steps or proceedings in court or otherwise to collect or enforce the said debts owing to them or either or any of them, but will at any and all times receive and apply thereon such amounts as may be paid to them by the said trustees, or said, Mark J. Fitzpatrick, and will, whenever such debts or any of them may be paid in full, surrender, release, and discharge any lien or claim which they may assert therefor."

The trust deed was duly recorded in the office of the register of deeds, though the acceptance thereof by the creditors was not. Subsequent to the execution of the deed and acceptance by the creditors, the trustees took possession of the property and entered upon the discharge of their duties as such. Thereafter defendant Hurley perfected liens upon the parcels of land referred to in the trust deed as tracts against which he possessed a lienable claim, and for the preferred payment of which, with other lien claimants, the trust provided, and brought an action to foreclose one of them. This action was brought to determine the validity of the perfected liens; the theory being that defendant had thereby clouded the title to the property, and hindered and obstructed the trustees in the discharge of the trust.

Defendant, in his answer, insisted upon the right to perfect his liens subject to the power of sale by the trustees, and demanded that judgment be so ordered. He further claimed that, inasmuch as the trustees have sold one tract of land against which he had a lienable claim, he was entitled to judgment against the trustees for the amount thereof. There being no substantial controversy about the facts, the court below, on plaintiffs' motion, ordered judgment in their favor, as prayed for in the complaint. Judgment was so entered, and defendant appealed.

The questions presented by counsel do not require extended discussion. The trust deed and acceptance thereof by the creditors created a trust authorized by section 3249, R. L. 1905, binding upon all parties joining therein. The rights and liabilities of each, if not specifically defined by the contract, are controlled by the rules and principles of law applicable to the subject of composition with creditors. In such cases all parties joining in the composition are bound by the terms of the contract entered into for that purpose, and neither has the right to depart therefrom in an attempt to advance over others his own special interests; nor has he the right to institute proceedings at variance with the purpose of the trust, or which would naturally embarrass or hinder the trustees in the performance of their duties. While in the case at bar the creditors involved did not release their claims against Fitzpatrick in consideration of a receipt of the pro rata share of the proceeds of the property transferred to the trustees, they each undertook and agreed to extend the time of payment therefor for the period of two years, and each creditor also agreed not to "take any steps or proceedings, in court or otherwise, to collect or enforce the said debts owing to them, or either or any of them," during said two years. It is not contended that the contract was invalid, but defendant does insist that nothing is contained therein to prevent a filing and perfecting of liens to which, in the absence of the agreement, any creditor would have been entitled. It was on this theory that defendant perfected liens upon four parcels of the property conveyed to the trustees.

We are of opinion, and so hold, that defendant's position is untenable. The trust agreement expressly provided for preference in payment of defendant's lienable claims, and of necessity such claims were thereby made superior to the rights of creditors not possessing similar claims, and so long as the trust agreement remains in force defendant has not only no right, but there is no occasion, for filing or perfecting liens upon his claims. He expressly agreed by the terms of his acceptance not to do so. At least the agreement not to take any proceedings, in court or otherwise, to collect or enforce his claims, to give full force and effect to the transaction, must be so construed. He retains his preference, but

waived the right to perfect the statutory lien. His act in filing his liens was therefore a violation of this part of the contract, and he thereby incumbered and clouded the title of the trustees.

We are also clear that whatever, in form or name, the action be termed, it may be maintained for the purpose of clearing the record of the obstructions placed upon the title to the property by defendant's conduct. Styer v. Sprague, 63 Minn. 414, 65 N. W. 659; Palmer v. Yorks, 77 Minn. 20, 79 N. W. 587; Sherman v. Fitch, 98 Mass. 59. It is not important whether the action be called one to determine adverse claims, to remove a cloud, or to quiet title. The complaint alleged the assertion of liens by defendant to the embarrassment of the trustees, and the answer admitted the fact, and alleged that the claimed liens were duly perfected by filing statements thereof, as required by law, with the register of deeds. An issue concerning the title to the property was thus raised, and brought the action within the authorities cited.

The court properly adjudged the liens, as perfected, invalid, and that defendant's remedy for the collection or enforcement of his claim is that provided for by the trust agreement, and not by independent proceedings at variance therewith. The issues involve rights in and to the land, and there was clearly no intention on the part of the court below to hold that the preference extended to defendant under the trust agreement should in any manner be impaired by the judgment ordered. The purpose was to clear the title, to the end that the trustees might proceed in the execution of the trust. In other words, there was no intention on the part of the court to hold that defendant did not have a lienable claim and a preference in the distribution of proceeds as provided for by the trust agreement. All that was held, and all the judgment, properly construed, adjudicated, is that the perfected lien was a violation of the agreement, and should be expunged from the record.

2. The defendant further contends that the court erred in not awarding him certain relief under that part of his answer which he terms a counterclaim. No counterclaim was pleaded which warranted any specific relief. As already stated, the action did not concern the rights of any of the parties to the proceeds of the property. Its

sole purpose was to clear the title of the land, leaving the trustees free to act, and the rights of all concerned in and to the proceeds of property sold remain unaffected. If defendant is entitled to any part or proportion of proceeds of property heretofore sold, in respect to which he has a preferred claim under the trust agreement, he must seek his remedy in a proceeding to which all his associate creditors are parties and may be heard. His rights in this respect are wholly foreign to the purpose of the present action.

3. Nor does the action involve the rights of the parties in the event that the trust fails. Defendant waived his right to proceed to perfect a mechanic's lien and the foreclosure of the same pending the period prescribed for the completion of the trust, and his rights in the event of the failure of the trust are not here involved.

Judgment affirmed.